## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TYRONE TATE**                                              **CIVIL ACTION**

**VERSUS**                                                   **NO.  05-5690**

**CRIMINAL SHERIFF ORLEANS PARISH**                          **SECTION "N"(4)**
**MARLIN GUSMAN**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including

an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for

disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as

applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**.  Upon review of the entire record, the Court has

determined that this matter can be disposed of without an Evidentiary Hearing.

I.    **Factual Summary**

    A.    **The Complaint**

The plaintiff, Tyrone Tate ("Tate"), was incarcerated in the Winn Correctional Center in

Winnfield, Louisiana, at the time of the filing of this *pro se* and *in forma pauperis* complaint.  Tate

filed this complaint pursuant to Title 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff

Marlin Gusman.  Tate alleges that he was exposed to harsh and inhumane conditions of confinement

while incarcerated in the medical unit of the Orleans Parish Prison system ("OPP") during the

unprecedented aftermath of Hurricane Katrina.  The exclusive remedy he seeks is punitive damages

in the amount of  $175,000.  (*See* Rec. Doc. No.1, ¶ IV  and V).

On January 26, 2006,  a telephone conference was conducted by the previously assigned

magistrate judge with the plaintiff, participating *pro se*, and Tim Richardson, counsel for defendant.[1]

The plaintiff was sworn and testified for all purposes permitted by  *Spears v. McCotter*, 766 F.2d

179 (5th Cir. 1985).[2]

**B.      The *Spears* Hearing**

Tate testified that his claim arose during the time period in which he was incarcerated in the

Medical Observation Unit ("MOU") in OPP during and immediately after Hurricane Katrina, which

occurred on August 29, 2005.  Tate testified that he is 58 years old.  At the time, he was a pretrial

detainee awaiting prosecution for a drug possession charge.  Tate now alleges that he was subjected

to inhumane conditions during the storm.  Second, he contends that he was not provided with

adequate medical attention during the storm.  As a result he believes that the defendant, Sheriff

Gusman, violated his civil rights.

 He testified that he initially arrived at OPP on August 24, 2005, and underwent a routine

intake heath screening.  He was assigned to the MOU because he was recently diagnosed with Type

2 diabetes at Veterans Hospital and was given gulcophide to treat his diabetes.  He also testified that

Dr. Caldwell, an OPP physician, ordered a special, diabetic diet for him.  Although he had not begun

to receive the diet plate before the storm, this is not part of his claim here.

---

[1] Rec. Doc. No. 16, 18.  The cassette tape of the hearing is in the custody of the Court Recording Unit.

[2] The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims.  The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure.  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

Instead, he testified that he only complains of events that occurred after the water began to rise in the prison and the power went out.  He testified that he remained in the MOU during the storm, through August 30, 2005.  He testified that the MOU was located on the first floor of Unit A-2 of the Templeman Jail, Phase I within the prison system.

Tate testified that on the night of Sunday, August 28, 2005, the water began to back up in the drainage system and continued to rise.  He claims that the deputies, who were on guard duty, panicked and left the inmates stranded without supervision.  He claims that they had no medication, food or drinking water.

He recalled that the water rose to waist high or approximately two or three feet.  He stated that it was high enough to cover the lower bed on  bunk beds in the unit.  He  claims that he was submersed in the water overnight, perhaps as long as 12 hours, with 60 other inmates.  He stated that the he took turns with other inmates to be in the water or on higher furniture.  They remained there until sheriff's deputies returned to escort him and other inmates to the gymnasium upstairs.

He testified that although they were moved out of the flooded area, there was no food, drinking water, medication or bathroom facility in the gymnasium.  He testified that there were a total of 200 inmates in the gym at one time and the only advantage they had being in the gym was that it had not flooded.

Tate also stated that they remained in the gym for another night and were then escorted through the chest-high water to boats, which took them to an elevated overpass ramp on Broad Street on August 30, 2005.  He stated that he remained on the Broad Street overpass with a few thousand other inmates for approximately eight to nine hours.  He claims that they were later transported by bus from Earhardt Boulevard to prison facilities around the State.

He claims that he was initially taken to Hunt Correctional Center in St. Gabriel, Louisiana, where he stayed overnight. He was taken the next day to Winn Correctional Center at around 4:00 a.m. on August 31, 2005.

Tate further clarified that his medical care claim is not directed toward anyone at Winn Correctional Center. His claim applies instead to the lack of medical attention at OPP during the Hurricane and its aftermath. He states that, while he did not suffer physical injuries, he did experience much stress and neglect during the Hurricane ordeal. Tate further testified that he is now receiving adequate treatment for his diabetes at Winn Correctional Center. He also is unaware when he may be transferred or returned to OPP for the completion of his criminal case.

Tate alleges that Sheriff Gusman's delay in evacuating him caused him great hardship and violated his constitutional rights under Title 42 U.S.C. § 1983.

## II.   <u>Standard of Review</u>

Title 28 U.S.C. §§ 1915(e)(2), 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss complaints filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under these statutes, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper*

*v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

**III.   Analysis**

**A.    Claims Against Sheriff Gusman**

Tate complains that the evacuation process at OPP during Hurricane Katrina was not timely and was negligently performed, which caused him to suffer without food, medical attention, and water for a couple of days.  Tate, therefore, contends that the manner and timing of the evacuation constituted cruel and unusual punishment.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted).  "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on the claim for damages under §1983.  However, a supervisory

official, like Sheriff Gusman, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).

Tate  does not allege that Sheriff Gusman was personally involved in the acts about which he complains or in the evacuation process itself.  He has not alleged that Sheriff Gusman was personally involved in the denial of food before or during the evacuation.

Furthermore, to the extent Tate claims that Sheriff Gusman acted negligently in responding to or preparing for this emergency situation, his claims are still frivolous.  Acts of negligence do not implicate the Due Process Clause such to give rise to a claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *see also Davidson v. Cannon*, 474 U.S. 344 (1986).  Allegations amounting to negligence cannot support a § 1983 claim for violation of the Eighth Amendment. *Eason v. Thaler*, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (noting no negligent deprivation of religious rights or gross negligence in permitting a gas leak to occur); *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (finding no negligent failure to protect); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (noting that negligent medical care does not constitute a valid claim under § 1983); *Doe v. Taylor Independent School District*, 975 F.2d 137, 142 (5th Cir. 1992), *vacated on other grounds*, 15 F.3d 443 (5th Cir. 1994) (noting that "[e]ven when constitutional

6

liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.")

Instead, an official must act with deliberate indifference to be liable under § 1983.  An official is deliberately indifferent to an inmate's health and safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999).  "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001).  In this case, Tate has made no such showing of an intentional indifference by Sheriff Gusman.

In addition, Tate has also failed to show that the temporary conditions caused by the hurricane violated his constitutional rights.  In order to prove that the conditions of his confinement violated the Fourteenth Amendment, an inmate must show, "that, from an objective standpoint, [they] denied him the minimal measure of necessities required for civilized living". *Farmer*, 511 U.S. at 834.  An episodic act or omission of a state jail official does not violate an inmate's constitutional right to be secure in his basic human needs unless he demonstrates that the official acted or failed to act with deliberate indifference to those needs.  *Hare*, 74 F.3d at 633.

Tate has not alleged that Sheriff Gusman personally acted with deliberate indifference to his safety, any specific medical need, or to the sanitation of the prison during the unprecedented events and temporary conditions resulting from Hurricane Katrina, the largest natural disaster that the United States has experienced in its history. Tate recognizes that the officials realized the risk of

harm caused by the rising waters and evacuated the inmates from the prison, albeit under difficult and unpleasant circumstances.

Without a showing of a deliberate indifference, Tate's claims against Sheriff Gusman should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e.

**B.**     **Lack of Physical Injury**

Additionally, Tate's claims against Sheriff Gusman should be dismissed because he concedes that he suffered no physical injury as a result of any of the conditions or lack of medical attention. Tate testified during his *Spears* Hearing that he experienced stress, neglect and pain and suffering but no physical injury.

Title 42 U.S.C. § 1997e(e) provides that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

In the instant case, Tate does not allege that he sustained a physical injury as a result of the delayed evacuation. While he indicates that he is diabetic, he does not allege that the failure to provide him with food or insulin caused him any physical harm. Furthermore, in some circumstances, delay in providing needed medical treatment may amount to a constitutional violation but only when the defendant acted with deliberate indifference and not mere negligence. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Benson v. Cady*, 761 F.2d 335 (7th Cir.1985); *Duncan v. Duckworth,* 644 F.2d 653 (7th Cir.1981). That is not the case alleged by Tate. Therefore, his claim that he sustained emotional and/or psychological damages arising out of the manner in which the

evacuation took place should therefore be dismissed as frivolous and/or for failure to state a claim for which relief can be granted under 28 U.S.C.§ 1915e(2) and 42 U.S.C. § 1997 (e)(1).

## IV.    Recommendation

It is therefore **RECOMMENDED** that Tate's § 1983 claims against Sheriff Gusman be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim for which relief can be granted pursuant to Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _____27th_____ day of _____September_____, 2006.

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**